IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DAVID J. AIELLO, | ) | |
|---|---|---|
| | ) | CIVIL ACTION NO. 3:15-193 |
| Appellant, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| MARIRA A. AIELLO, | ) | |
| | ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

I.    **INTRODUCTION**

This matter comes before the Court on Appellant's Notice of Appeal of the Bankruptcy Court's July 13, 2015, memorandum opinion (ECF No. 1-2) and order (ECF No. 1-3) granting Appellee's motion for summary judgment. Appellant appealed the Bankruptcy Court's decision on July 23, 2015, (ECF No. 1), and filed a brief in support of his appeal on September 9, 2015, (ECF No. 3). Appellee filed her brief in opposition to Appellant's appeal on October 9, 2015, (ECF No. 4), and this matter is now ripe for disposition. For the reasons set forth below, this Court will deny Appellant's appeal and will affirm the Bankruptcy Court's decision granting Appellee's motion for summary judgment.

## II. JURISDICTION

This Court has jurisdiction to hear appeals from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a), which provides:

> The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158(a). The appeal in this case is taken from the decision rendered by the Bankruptcy Court of the Western District of Pennsylvania. This Court therefore has jurisdiction to hear the appeal from the Bankruptcy Court's decision. *See In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012) ("[A] district court sits as an appellate court to review a bankruptcy court."); *see also In re Professional Management*, 285 F.3d 268 (3d Cir. 2002) (a district court's jurisdiction is proper as to an appeal of the final order of the bankruptcy court under 28 U.S.C. §158(a)).

## III. BACKGROUND

### A. Factual Background

The Court adopts the facts as set forth in the Bankruptcy Court's July 23, 2015, memorandum opinion. (*See* [ECF No. 1-2 at 2-4.](#)) Appellee was married to Donald Aiello, Appellant's twin brother. (*[Id.](#) at 2.*) When Donald Aiello passed away in 1977, Appellant became the executor of his estate after Appellee renounced her appointment. (*[Id.](#)*) After Appellee filed a petition seeking an accounting of Appellant's administration of the estate,

she filed exceptions to the accounting in the Court of Common Pleas of Elks County, Orphans' Court Division, alleging self-dealing and a breach of fiduciary duty. (*Id.*) Following an evidentiary hearing, the Orphans' Court concluded that Appellant failed to act in the best interest of the estate as a result of his self-dealing to promote his own interest to the detriment to the estate, failed to fulfill his obligations as executor, and breached his fiduciary duties. (*Id.*) The Superior Court of Pennsylvania affirmed the decision of the Orphans' Court. (*Id.*)

In 2010, based upon the surcharges with interest imposed by the Orphans' Court, Appellee entered judgment against Appellant in the amount of $1,021,723.34. (*Id.* at 3.) Appellant filed a Chapter 7 bankruptcy petition on September 6, 2012. (*Id.*) On January 2, 2014, Appellee filed a complaint to determine dischargeability. (*Id.*) Appellee then filed a motion for summary judgment, arguing that the judgment against Appellant arising from the decision of the Orphans' Court constituted a nondischargeable debt and that the doctrine of collateral estoppel precluded Appellant from relitigating issues that had been decided by the Orphans' Court and the Superior Court. (*Id.* at 3, 5.) The Bankruptcy Court held a hearing and ordered briefing on Appellee's motion. (*Id.* at 3-4.)

### B. The Bankruptcy Court's Decision

Applying the doctrine of collateral estoppel, the Bankruptcy Court first determined that a final judgment on the merits of the case had been reached by the Orphans' Court when it concluded that Appellant violated his fiduciary duty and imposed surcharges. (*Id.* at 8.)

3

The Bankruptcy Court found that the identity of the parties was the same because Appellee was the plaintiff and Appellant was the defendant in both actions. (*Id.* at 8-9.) The Bankruptcy Court also found that the parties had a full and fair opportunity to litigate because the Orphans' Court held an evidentiary hearing before rendering a decision, and the appeal was fully litigated before the Superior Court. (*Id.* at 9.) Regarding the identity of the issues, the Bankruptcy Court explained that the issue of whether Appellant committed defalcation while acting in a fiduciary duty was before it and that the issues of Appellant's breach of fiduciary duty and resulting damages were before the Orphans' Court. (*Id.* at 10.) The Bankruptcy Court therefore determined that the doctrine of collateral estoppel applied to the findings and conclusions of the Orphans' Court and the Superior Court. (*Id.*)

In reviewing the decision of the Orphans' Court, the Bankruptcy Court explained that Appellee, who had relied upon Appellant because she was not knowledgeable about business, raised seven claims against him in the state-court action. (*Id.* at 10-11.) First, the Orphans' Court found that Appellant redeemed 100 shares of the estate's interest in a cable television company for a $200,000 note. (*Id.* at 11-12.) The shares were valued at $400,000, and Appellant redeemed the shares before the company was sold for $1.5 million. (*Id.* at 12.) Appellant and his other brother, Victor, were the only two remaining shareholders who benefited from the sale. (*Id.*) Because the shares would have been valued at $500,000 if they had been retained until after the sale, the Orphans' Court imposed a $300,000 surcharge against Appellant for self-dealing. (*Id.*)

4

Second, the Orphans' Court found that Appellant purchased 125.5 shares of the estate's shares of stock in St. Mary's Pressed Metals, Inc. without making an effort to market the estate's shares publicly or privately. (*Id.* at 12-13.) An entity known as the Ohio Carbon Group also purchased the stock. (*Id.* at 13.) The stock price was determined by Appellant, an attorney who was the primary advisor to the estate, and a law firm that represented the Ohio Carbon Group. (*Id.*) Appellant failed to seek court approval for the sale of stock to himself and his business associates, and he failed to obtain a stock certificate for the remaining eighteen shares held by the estate. (*Id.*) The Orphans' Court determined that Appellant's acts of self-dealing were "blatant" and voided the transfer of the estate's shares of stock. (*Id.* at 13-14.) Third, Appellant loaned $250,000 of the estate's funds to St. Mary's Pressed Metals, Inc. but did not disclose the loan to Appellee. (*Id.* at 14.) The Orphans' Court concluded that Appellant engaged in self-dealing and offered no reasonable explanation for forgiving the balance of the loan. (*Id.*) A surcharge of $49,268.12, the balance of the loan, was imposed against Appellant. (*Id.* at 15.) Fourth, the Orphans' Court determined that Appellant failed to act with diligence because the eighteen shares of St. Mary's Pressed Metals, Inc. stock owned by the estate were not transferred to Appellee. (*Id.*)

Fifth, Appellant owned 50% of a business called Salberg Auto Wreckers. (*Id.*) After distributing $50,000 from the estate to Appellee, Appellant advised Appellee to invest the funds in the business. (*Id.*) Appellant then used the funds to buy out the interest of the other 50% partner. (*Id.*) When the business was sold nine years later for $65,000, only $31,571.75

was returned to Appellee.  (*Id.* at 15-16.)  The Orphans' Court found that Appellant engaged in self-dealing and imposed a surcharge of $18,428.25.  (*Id.* at 16.)  Sixth, the estate held interest in three pieces of real property.  (*Id.*)  Appellant owned the Van Aken property with the estate as tenants in common.  (*Id.*)  Appellant conveyed the estate's interest in the property to himself without seeking court approval.  (*Id.*)  The estate's interest in the Jones Township property was transferred to Victor's family trust, and the estate's interest in the Johnsonburg property was transferred to Victor.  (*Id.*)  The Orphans' Court found that Appellant transferred the estate's interest in each piece of property without consideration for the conveyance and without properly accounting for the interest of the estate.  (*Id.* at 17.) The Orphans' Court therefore concluded that Appellant violated his fiduciary duty and voided Appellant's interest in the Van Aken property.  (*Id.*)  Seventh, the Orphans' Court determined that Appellant failed to maintain proper care and custody of the estate's records and imposed an additional surcharge of $25,000 on Appellant for his failure to act in the best interest of the estate.  (*Id.* at 18.)

In considering Appellee's motion for summary judgment, the Bankruptcy Court explained that to prevail under 11 U.S.C. 523(a)(4), a plaintiff must prove that the defendant was acting in a fiduciary capacity and that the defendant committed fraud or defalcation while acting in that capacity.  (*Id.* at 19.)  Defalcation is the failure to fully account for funds handled in a fiduciary capacity.  (*Id.*)  The Bankruptcy Court first determined that Appellant

stood in a fiduciary relationship to Appellee as executor of the estate to which Appellee was a beneficiary. (*Id.*)

Regarding whether Appellant committed defalcation, the Bankruptcy Court reviewed the standards applied in determining whether conduct is deemed a defalcation. (*Id.* at 19-21.) In applying these standards to the facts of the case, the Bankruptcy Court explained that the Orphans' Court found "numerous" breaches of fiduciary duty by Appellant and imposed surcharges for Appellant's failure to meet the duty of care. (*Id.* at 22.) The Bankruptcy Court also explained that Appellant, who was not sophisticated in business and who did not speak English as her native language, placed an "inordinate" amount of trust in Appellant. (*Id.* at 23.)

After reviewing the law applicable to such self-dealing, the Bankruptcy Court concluded that Appellant knew that his actions were breaches of his fiduciary duty or, at a minimum, consciously disregarded the substantial risk that his actions would result in a breach of fiduciary duty. (*Id.* at 24-26.) Specifically, the Bankruptcy Court determined that Appellant's series of actions and inaction exhibited a pattern of "managing the estate of his brother for his own convenience and purposes." (*Id.* at 26-27.) Explaining that the decision of the Orphans' Court was replete with such findings, the Bankruptcy Court concluded that "[t]he gap between [Appellant's] duty and his conduct was sufficiently obvious and occurred with such frequency that . . . [he] was at least willfully blind to the risk that his conduct would violate his fiduciary duty." (*Id.* at 28-29.) Because the Bankruptcy Court

7

found that "the record is sufficient to establish the requisite state of mind of [Appellant]," it granted summary judgment to Appellee, holding that Appellant committed defalcation and that the debt owed to Appellee is nondischargeable. (*Id.* at 30-31.)

## IV. STANDARD OF REVIEW

This Court may exercise appellate jurisdiction over final judgments, orders, and decrees entered by bankruptcy courts. 28 U.S.C. § 158(a)(1). In reviewing a bankruptcy court's decision, a district court must apply several standards of review. First, a bankruptcy court's factual findings are reviewed for clear error and its exercise of discretion for abuse thereof. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998). A factual finding is "clearly erroneous" if the reviewing court is "left with a definite and firm conviction that a mistake has been committed." *In re W.R. Grace & Co.*, 729 F.3d 311, 319 n.14 (3d Cir. 2013) (internal quotations omitted). Under the clearly erroneous standard, "it is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Coalition to Save Our Children v. State Bd. of Educ.*, 90 F.3d 752, 759 (3d Cir. 1996) (internal quotations omitted).

Second, a bankruptcy court's legal determinations are reviewed de novo. *See In re Ruitenberg*, 745 F.3d 647, 650 (3d Cir. 2014); *see also Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). Third, mixed questions of fact and law must

8

be differentiated and reviewed under the appropriate standard for each component. *See In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003). Fourth, a bankruptcy court's exercise of discretion must be reviewed for abuse. *In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013). A bankruptcy court abuses its discretion when its ruling rests upon an error of law or a misapplication of law to the facts. *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).

V.  **ANALYSIS**

   A.  **The Bankruptcy Court's Factual Findings**

As noted above, the Court cannot disturb the factual findings of the Bankruptcy Court unless they are "clearly erroneous." *In re W.R. Grace & Co.*, 729 F.3d at 319 n.14. The only factual findings that were made by the Bankruptcy Court concerned the procedural history of Appellee's petition seeking an accounting of Appellant's administration of the estate, Appellee's exceptions to the accounting, the decision of the Orphans' Court, and the Superior Court's affirmance of the Orphans' Court. (*See* [ECF No. 1-2 at 2-4.](#)) The parties' briefs reiterate the facts as set forth by the Bankruptcy Court, (*see* [ECF No. 3 at 6-7](#); [ECF No. 4 at 8-10](#)), and the documents attached to Appellant's appeal confirm these facts, (*see* [ECF No. 2](#)). The Court therefore cannot conclude that the Bankruptcy Court's factual findings are "completely devoid of minimum evidentiary support displaying some hue of credibility" or "bear[] no rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*,

201 F.3d 200, 208 (3d Cir. 2000). Accordingly, the Court may not disturb the Bankruptcy Court's factual findings.

B.  **The Bankruptcy Court's Legal Conclusions**

As discussed above, this Court exercises plenary, or de novo, review over any legal conclusions reached by the Bankruptcy Court. *In re Ruitenberg*, 745 F.3d at 650 (3d Cir. 2014); *Am. Flint Glass Workers Union*, 197 F.3d at 80. The Court must "exercise plenary review of the court's interpretation and application of [the] facts to legal precepts." *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011).

In his brief in support of his appeal, Appellant argues that the Bankruptcy Court improperly applied the doctrine of collateral estoppel to the case because nondischargeability is independent of the issue of the validity of the underlying claim. ([ECF No. 3 at 8.](#)) Appellant also asserts that the Bankruptcy Court improperly held that a defalcation occurred, arguing that the Bankruptcy Court relied upon case law that is distinguishable from this case. (*[Id.](#) at 10, 12.*) Appellant states that the Orphans' Court did not make any findings as to his mental state and found only that he was strictly liable to Appellee after determining that he had engaged in self-dealing. (*[Id.](#) at 11.*) Because Appellant's intent was not litigated before the Orphans' Court, Appellant contends that the doctrine of collateral estoppel does not apply and that his state of mind is an issue of fact that must be determined by the trial court. (*[Id.](#) at 12-14.*)

10

In response, Appellee argues that well-settled law supports the proposition that intent may be determined from the record. (ECF No. 4 at 15.) Appellee emphasizes that "Appellant has been found to have committed blatant acts of self-dealing after a trial on the merits, which he orchestrated for his own benefit and to the detriment of Appellee, as found by the Orphans' Court based upon the evidence presented at trial, as well as by the Superior Court based upon the record on appeal." (*Id.* at 16.) Appellee asserts that the Bankruptcy Court relied upon well-settled law in rendering its decision and provides additional case law for the Court's consideration. (*Id.* at 17-20.) Because Appellant's conduct was obvious and occurred with frequency, Appellee requests that the Court deny his appeal. (*Id.* at 20.)

Having conducted a de novo review of the law, the Court concludes that the Bankruptcy Court did not err in granting Appellee's motion for summary judgment. In conducting its de novo review, the Court first finds that the doctrine of collateral estoppel applies. The doctrine of collateral estoppel applies when: (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or is in privity with a party in the prior case; and (4) the party seeking to relitigate had a full and fair opportunity to litigate the issue in the prior proceeding. *See LaMacchia v. Tarbell*, 440 B.R. 668, 672 (Bankr. W.D. Pa. 2010); *see also Witkowski v. Welch*, 173 F.3d 192, 203 n.15 (3d Cir. 1999).

Here, the second, third, and fourth requirements are satisfied. The parties involved in the Orphans' Court action are the same as in the instant case. The Orphans' Court reached

11

a final judgment finding Appellant in violation of his fiduciary duty and imposing surcharges. In reaching its decision, the Orphans' Court provided the parties with a full and fair opportunity to litigate the issue by holding an evidentiary hearing and rendering a decision. The Court also finds that the Bankruptcy Court properly relied upon *Li v. Peng*, 516 B.R. 26 (D.N.J. 2014), and *Tomasi v. Savannah N. Denoce Trust*, No. 12-1401, 2013 Bankr. LEXIS 4596 (B.A.P. 9th Cir. Aug. 15, 2013), in concluding that there is an identity of the issues. In *Li*, the appellant argued that collateral estoppel did not apply to his disbarment proceeding because the disciplinary proceeding did not address defalcation while acting in a fiduciary capacity. 516 B.R. at 42. In rejecting the appellant's argument, the court explained:

> While Appellant is correct that the State Court did not rule on any issues relating to the dischargeabilty in bankruptcy of Appellant's liabilities, this was of no consequence for the Bankruptcy Court's decision; the underlying factual issues surrounding Appellant's fraud and misappropriation of client funds, which were directly raised in the New Jersey Supreme Court, were identical to those before the Bankruptcy Court when it made its independent decision concerning dischargeability under § 523(a)(4).

*Id.* at 43. The court further explained that "[f]raudulent [i]ntent may be determined from the facts and circumstances surrounding the act." *Id.* at 44 (internal quotations omitted). Because "the facts found by the New Jersey Supreme Court support[ed] a finding against Appellant either as a disloyal fiduciary or an embezzler," the court concluded that the state court had resolved identical issues to those posed before the Bankruptcy Court. *Id.* Similarly, in *Tomasi*, the Ninth Circuit concluded that the state court's finding that the appellant's self-dealing conduct had constituted "bad faith" satisfied 11 U.S.C. § 523(a)(4).

12

*Tomasi*, 2013 Bankr. LEXIS 4596 at *34. The Bankruptcy Court therefore properly concluded that identifity of the identity of issues requirement of the collateral-estoppel doctrine was satisfied.

In applying *Li* and *Tomasi* to the instant case, the facts and circumstances surrounding Appellant's conduct support a finding against Appellant as a disloyal fiduciary. *See Li*, 516 B.R. at 44; *Tomasi*, 2013 Bankr. LEXIS 4596 at *34. Although Appellant was found to have breached his fiduciary duty, such a finding "does not, however, necessarily mean that a breach rises to a level of defalcation." (ECF No. 1-2 at 23 (citing *Fogg v. Pearl*, 502 B.R. 429, 442 (Bankr. E.D. Pa. 2013) ("[N]ot all breaches of fiduciary duties rise to the level of a defalcation under § 523(a)(4).").) In this case, however, Appellant's conduct supports a finding of several "intentional wrong[s]." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1756 (2013) ("'[D]efalcation' requires an intentional wrong. An intentional wrong includes not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent."). Appellant sold the estate's stock in a cable television company to himself and a third party; purchased 125.5 shares of the estate's shares of stock in St. Mary's Pressed Metals, Inc. without making an effort to market the estate's shares publicly or privately; loaned $250,000 of the estate's funds to St. Mary's Pressed Metals, Inc.; advised Appellee to invest $50,000 of the estate's funds in a business in which he was an owner; and conveyed the estate's interest in three different pieces of real property for no value. (*See* ECF No. 1-2 at 11-18.) Moreover, Appellant failed to advise

Appellee, who speaks English as a second language and is not sophisticated in business, of the estate's transactions. (*See id.*) He also failed to obtain court approval for transactions that required it. (*See id.*)

Not only do the factual circumstances of Appellant's conduct support a finding that the breach of his fiduciary duty constituted defalcation, but well-settled case law also supports such a finding. *See, e.g.*, *Heers v. Parsons*, 529 B.R. 734, 743 (B.A.P. 9th Cir. 2015) (upholding grant of summary judgment pursuant to 11 U.S.C. § 523(a)(4) after finding that the defendant's pervasive and unjustified breaches of fiduciary duties reflected a conscious and reckless disregard); *Smiedt v. Williams*, No. 13-40856, 2014 Bankr. LEXIS 2585, at *28 (Bankr. E.D. Tex. June 12, 2014) (granting the plaintiff's motion for summary judgment pursuant to 11 U.S.C. § 523(a)(4) after concluding that the defendant's self-dealing and intentional retention of funds was not as a result of mere inadvertence or negligence); *De Leon v. Cordova*, No. 12-10756, 2013 Bankr. LEXIS 3060, at *14-15 (Bankr. D.N.M. July 30, 2013) (granting the plaintiff's motion for summary judgment pursuant to 11 U.S.C. § 523(a)(4) after concluding that the defendant, who "breached her fiduciary duties for the purpose of self-dealing and for self-benefit," "knew the improper nature of her actions, or at least was grossly negligent with respect to those actions and her fiduciary duties); *Pearl*, 502 B.R. at 443 (finding that the defendant's conduct of spending more than $160,000 of the estate's reserve "warrant[s] the conclusion that either she was aware of, or she willfully blinded herself to, the impropriety of her conduct").

Additionally, the Court notes that in a case involving facts similar to the instant case, the Bankruptcy Court granted summary judgment, finding that the defendant's debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(4). *Chaney v. Grigg*, No. 12-7008, 2013 Bankr. LEXIS 4411 (Bankr. W.D. Pa. Oct. 23, 2013). Specifically, the defendant, who had represented the plaintiff in connection with marital dissolution proceedings, paid himself over two million dollars in attorneys' fees. *Id.* at *3-4. The Bankruptcy Court, noting that the issue of the defendant's breach of his fiduciary duty was not litigated, determined that the defendant "at a minimum consciously disregarded a substantial and unjustifiable risk that his conduct would turn out to violate a fiduciary duty." *Id.* at *30. The Bankruptcy Court therefore concluded that the state of mind required by Bullock had been established and that the defendant's debt was nondischargeable. *Id.* at *30-31. On appeal, this Court affirmed, finding that "the Bankruptcy Court was entitled to rely on the ancillary proceedings to find evidence of Appellant's state of mind for purposes of establishing defalcation." *Grigg v. Chaney*, No. 3:13-CV-292, 2014 U.S. Dist. LEXIS 158769, at *21 (W.D. Pa. Nov. 10, 2014). The Third Circuit affirmed this Court's decision. *Chaney v. Grigg*, 619 Fed. Appx. 195 (3d Cir. 2015) ("The Bankruptcy Court provided a detailed analysis, which we need not further expound here, and concluded (correctly) that Grigg acted in violation of his fiduciary capacity with the state of mind required by *Bullock*.").

Accordingly, in applying well-established law and in examining the many instances in which Appellant conduct constituted "an intentional wrong," the Court will affirm the

Bankruptcy Court's holding that Appellant's debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

### C. The Bankruptcy Court's Exercise of Discretion

Finally, the Court reviews a bankruptcy court's exercise of discretion for abuse. *In re Friedman's Inc.*, 738 F.3d at 552. A bankruptcy court abuses its discretion when its ruling rests upon an error of law or a misapplication of law to the facts. *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d at 122. Because the Court concurs with the Bankruptcy Court's application of the relevant law to Appellee's motion for summary judgment, no error of law or misapplication of the law to the facts is present in the Bankruptcy Court's decision. Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion.

## VI. CONCLUSION

For the foregoing reasons, the Court will deny Appellant's appeal and will affirm the decision of the Bankruptcy Court, as memorialized in *Aiello v. Aiello*, No. 12-70806-JAD (Bankr. W.D. Pa. July 13, 2015). ([ECF No. 1-2.](#))

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID J. AIELLO, | ) |
| | ) CIVIL ACTION NO. 3:15-193 |
| Appellant, | ) |
| | ) JUDGE KIM R. GIBSON |
| v. | ) |
| | ) |
| MARIRA A. AIELLO, | ) |
| | ) |
| Appellee. | ) |

## ORDER

**AND NOW**, this 17th day of February, 2016, upon consideration of Appellant's appeal (ECF No. 1), the supplemental record from the Bankruptcy Court (ECF No. 2), Appellant's brief in support of his appeal (ECF No. 3), and Appellee's brief in opposition to Appellant's appeal (ECF No. 4), **IT IS HEREBY ORDERED** that Appellant's appeal is **DENIED**. **IT IS FURTHER ORDERED** that the decision of the Bankruptcy Court, as memorialized in *Aiello v. Aiello*, No. 12-70806-JAD (Bankr. W.D. Pa. July 13, 2015) (ECF No. 1-2), is **AFFIRMED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE